UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

*ELECTRONICALLY FILED*

LINDA DAVIS, Individually and On
Behalf of All Others Similarly Situated,

      PLAINTIFF

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

-and-

STATE FARM FIRE AND
CASUALTY COMPANY,

      DEFENDANTS

_____

Civil Action No. 3:19-cv-00466-CRS

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION TO CERTIFY CLASS

Respectfully submitted,

**SAM AGUIAR INJURY LAWYERS, PLLC**

*/s/ Sam Aguiar*_____
C. Sam Aguiar
Jeffrey L. Freeman
1201 Story Avenue, Suite 301
Louisville, Kentucky 40206
Phone: (502) 813-8900
Fax: (502) 491-3946
sam@kylawoffice.com
jfreeman@kylawoffice.com
*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................3-4

I.      INTRODUCTION..............................................................5

II.     LEGAL STANDARD UNDER RULE 23 ..............................7

      A.  Numerosity......................................................8

      B.  Commonality....................................................8

      C.  Typicality.......................................................9

      D.  Adequacy of Representation ........................................10

      E.  Superiority .....................................................10

III.    FACTUAL BACKGROUND ..................................................11

IV.    CLASS DEFINITION........................................................12

V.     ARGUMENT ..............................................................13

      A.  This action satisfies the requirements of Rule 23(a)...............13

      B.  This action satisfies the requirements of Rule 23(b) .............18

VI.    CONCLUSION ...........................................................20

## TABLE OF AUTHORITIES

**Cases**

*Afro American Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974). ............8

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455 (2013).....................7

*Barry v. Corrigan*, 79 F. Supp. 3d 712 (E.D. Mich. 2015), aff'd sub nom. *Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016). ..........................................................14

*Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026 (6th Cir.1977). ............................7

*Davidson v. Henkel Corp.*, 302 F.R.D. 427 (E.D. Mich. 2014)................................8, 14

*Gilbert v. Abercrombie & Fitch Co.*, No. 2:15-cv-2854, 2016 WL 4159682 (S.D. Ohio Aug. 5, 2016). ..........................................................................................8

*Golden v. City of Columbus*, 404 F.3d 950 (6th Cir. 2005)......................................8

*Gooch v. Life Investors Ins. Co. of Am.,* 264 F.R.D. 340 (M.D. Tenn. 2009), vacated, in part, 672 F.3d 402 (6th Cir. 2012).........................................................11

*Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481 (M.D. Tenn. 2019) .............................8

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 97 (1969).....................................................................................................................11

*Gries v. Standard Ready Mix Concrete*, LLC, 252 F.R.D. 479 (N.D. Iowa 2008) ....14

*Haley v. Medtronic, Inc.,* 169 F.R.D. 643 (C.D. Cal. 1996).....................................10

*In re American Medical Systems,* 75 F.3d 1069 (6th Cir.1996). .............................9

*In re Telectronics Pacing Sys.*, Inc., 172 F.R.D. 271 (S.D. Ohio 1997). .................9

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*.……………………. 18 722 F.3d 838, 850 (6th Cir. 2013)

*Kekich v. Travelers Indem. Co.,* 64 F.R.D. 660 (D. Pa. 1974)................................10

*Moscarelli v. Stamm*, 288 F. Supp. 453 (E.D.N.Y. 1968). ......................................11

*Poe v. Menghini*, 339 F. Supp. 986 (D. Kan. 1972)................................................11

*Powell v. Tosh*, 280 F.R.D. 296 (W.D. Ky. 2012), on reconsideration, No. 5:09-CV-121, 2012 WL 2601946 (W.D. Ky. July 5, 2012). ................................15, 19

*Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 521 (6th Cir. 2015)……………….. 19

*Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009 (W.D.Mich.1987)..............9

*Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291 (D. Conn. 2001). ...........................8

*Schaffner v. Chemical Bank*, 339 F. Supp. 329 (S.D.N.Y. 1972). ...........................10

*Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188 (6th Cir. 1988). .......................13

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011)..............................................7

*Watson v. Branch County Bank*, 380 F. Supp. 945 (W.D. Mich. 1974),
rev'd, 516 F.2d 902 (6th Cir. 1975)...........................................................................11

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532 (6th Cir. 2012)…………7, 9-10,12-14

**Statues, Rules, and Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................................passim

Moore's Federal Practice § 23.84 ........................................................................7

## I. INTRODUCTION

State Farm has failed to disclose the existence of uninsured (UM) or underinsured (UIM) motorist coverage to dozens, if not hundreds, of Kentucky residents needing that coverage for injury claims arising out of car accidents. In 2018 and 2019, undersigned counsel discovered that several of his own clients, including Plaintiff Linda Davis, had their UM and UIM claims closed by State Farm with the representation that the full extent of the available coverage had been disclosed and, when coverage was identified, fully paid. It was not. In some cases, State Farm failed to disclose any coverage whatsoever despite the existence of the same.[1] In other cases, like that of Linda Davis, State Farm paid the UIM policy limits under one policy and closed the matter without ever identifying to their own insured that there were other stackable policies in the household that could provide coverage.[2] These cases involve accidents dating back to at least 2013.[3] This conduct arises from claims handling methods that amount to unlawful claims and settlement practices, bad faith, fraudulent misrepresentations and omissions, consumer protection violations and grossly negligent conduct, all of which has resulted in the non-disclosure of millions of dollars in payable UM and UIM coverage to Kentucky State Farm insureds.

In 2018-2019, State Farm finally acknowledged its pattern and practice, conducting a review of their claims and disclosing to dozens of Kentucky insureds that coverage had

---

[1] See *Brown v. State Farm Auto Ins. Co.*, et al., 18-CI-00469, (Shelby Cir. Ct., 18-CI-469; filed Sep. 14, 2018); *Stinson v. State Farm Mut. Auto Ins. Co, et al.*, 3:18-cv-759-DJH, (W.D. Ky., 3:18CV-759-DJH; removed on Nov. 15, 2018); *Gallo v. State Farm Mut. Auto Ins. Co., et al.,* (W.D. Ky, 3:18-cv-842-CHB, removed on Dec. 19, 2018).

[2] See *Wright v. State Farm Mut. Auto Ins. Co., et al.*, 19-CI-00564, (McCracken Cir. Ct., 19-CI-564; filed June 20, 2019); *Chapman v. State Farm Mut. Auto Ins. Co*, 3:19-cv-442-RGJ, (W.D. Ky., 3:19CV-442-RGJ; removed on June 18, 2019).

[3] State Farm has confirmed the same in a recent discovery response in *Brown v. State Farm Auto Ins. Co.*, et al., 18-CI-00469, (Shelby Cir. Ct., 18-CI-469; filed Sep. 14, 2018)

been withheld from them in instances where such coverage was needed for their claims.[4] The company began sending out standard letters and, in many situations, checks for the full amount of the coverage. The amount of payable coverage withheld from insureds by the company is in the millions, if not tens of millions, of dollars.[5] Furthermore, the review only identified half of the issues, thus leaving other insureds exposed to the conduct without remedial efforts. This is due to the review only accounting for claims where underlying UM/UIM limits were paid by State Farm (the company identified situations where stackable coverage was not disclosed or paid); State Farm has not reviewed their claims to identify situations where no coverage was disclosed or paid at all, despite the existence of household policies which would have afforded coverage.[6]

Each member of the proposed class has similar (if not identical) claims available for this non-disclosure of coverage. The Plaintiff, Linda Davis, for herself and on behalf of the many other State Farm insureds who were entitled to make claims against coverage that remained undisclosed, brings this action for unfair claims and settlement practices, bad faith, violation of the Kentucky Consumer Protection Act, Breach of Fiduciary Duties, Fraudulent Misrepresentation and Omission, and Gross Negligence. Through this Motion and Memorandum in Support, the Plaintiff respectfully moves the Court to certify this action and the proposed class below.

---

[4] *See Exhibit A* for an example of the letters.
[5] *See Plaintiff's Complaint* at Paragraph 35(iv) for the definition of "payable" for purposes of defining the class.
[6] State Farm has also confirmed this fact in a recent discovery response in *Brown v. State Farm Auto Ins. Co.*, et al., 18-CI-00469, (S Shelby Cir. Ct., 18-CI-469; filed Sep. 14, 2018). Brown herself constitutes an example of this type of occurrence, as she was advised that there was no UM coverage available at all for her and her claim was denied, despite the existence of a household policy affording her the coverage.

## II.  LEGAL STANDARD UNDER RULE 23

A class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. To be certified, a class must satisfy the four Rule 23(a) prerequisites--numerosity, commonality, typicality, and adequate representation--and fall within one of the three types of class actions listed in Rule 23(b). The party seeking class certification has the burden to prove the Rule 23 certification requirements.[7]

In determining whether certification is appropriate, "it may be necessary for the court to probe behind the pleadings," and the analysis may "entail some overlap with the merits of the plaintiff's underlying claim" or involve "considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[8] "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[9] But in general, the district court must accept as true the allegations of plaintiffs' complaint and resolve doubts in favor of plaintiffs.[10] The question is not "who will prevail on the merits, but rather whether the proposed class and class representative[s] meet the requirements for certification under Rule 23(a) and (b)."[11] It is not always necessary to probe behind the pleadings before resting on the question of certification, because sometimes there may be no dispute of factual and legal issues strongly influencing class treatment.[12]

---

[7] *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir. 2012).
[8] *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-51 (2011).
[9] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013).
[10] See *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir.1977).
[11] 5 Moore's § 23.84(1).
[12] *Young,* 693 F.3d at 537.

### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."[13] A substantial number usually satisfies numerosity but no strict numerical test is applied.[14] "There is no magic minimum number that will breathe life into a class."[15] A plaintiff must show some evidence or be able to reasonably estimate the number of class members, and the court may make common sense assumptions when assessing numerosity without needing perfect precision in quantification.[16] "[T]he exact number of class members need not be pleaded or proved" for a class to be certified, as long as the class representatives can show that joinder would be impracticable.[17]

### b. Commonality

The second requirement to be met under Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class...."[18] "When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected."[19] "The commonality test 'is qualitative rather than

---

[13] Fed. R. Civ. P. 23(a)(1).

[14] *Gilbert v. Abercrombie & Fitch Co.,* No. 2:15-cv-2854, 2016 WL 4159682, at * 4 (S.D. Ohio Aug. 5, 2016) (citing Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006)).

[15] *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001) (quoting *Jones v. CCH–LIS Legal Info. Servs.*, 1998 WL 671446, *1 (S.D.N.Y. Sept. 28, 1998)).

[16] *Id.*

[17] *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir. 2005) (quoting *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2001)); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019); *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (holding that a class of 40 or more members is generally sufficient to satisfy the numerosity requirement); *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (holding that 35 class members satisfied the numerosity requirement).

[18] Fed. R. Civ. P. 23(a)(2).

[19] *Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1015 (W.D.Mich.1987).

quantitative, that is, there need be only a single issue common to all members of the class.'"[20]

### c. Typicality

A plaintiff's claim is typical if it arises from the same course of conduct or practice that that the other class members' claims also arise from, and if those claims are based on the same legal theory.[21]

While Rule 23(a)(2) requires plaintiffs to prove that there are questions of fact or law common to the class, Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims. Commonality and typicality tend to merge because they are both guideposts for whether the maintenance of a class action is economical under the circumstances, and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.[22] A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing her own claims, the named plaintiff will also advance the interests of the class members.

The fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones. While the commonality element of Fed. R. Civ. P. 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that

---

[20] *In re American Medical Systems,* 75 F.3d 1069, 1080 (6th Cir.1996) (citing Herbert Newberg, et al., 1, § 3–10 at 3–50 (3d. ed.1992); *In re Telectronics Pacing Sys.*, Inc., 172 F.R.D. 271, 280 (S.D. Ohio 1997).
[21] *Young,* 693 F.3d at 542.
[22] *Id.*

common questions will predominate over individual ones.[23] Where a threshold issue is common to all class members, class litigation is greatly preferred.[24]

### d. Adequacy of Representation

The adequacy inquiry under Fed. R. Civ. P. 23(a)(4) serves to assure that 1) the representative has common interests with unnamed members of the class without conflicts of interests and 2) that the representatives will vigorously prosecute the interests of the class through qualified counsel.

### e. Superiority

Rule 23 was enacted for the purpose of saving court resources and enabling similar actions by similar persons for similar remedies to be administered and determined in a simple, orderly, and economical fashion.[25] Class action resolution avoids multiplicity of litigation and separate litigations producing inconsistent results, and instead makes the litigation of related claims more efficient.[26] Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on individual basis.[27] However, class claims need not be based on identical facts or proof. Because a purpose to be served by class action is to prevent multiplicity of suits based on a wrong common to all, if class certification were denied simply because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle, much of utility of Rule 23 would be destroyed.[28]

---

[23] *Id.* at 545.
[24] *Id.*
[25] *Kekich v. Travelers Indem. Co.,* 64 F.R.D. 660, 667 (D. Pa. 1974).
[26] *Schaffner v. Chemical Bank*, 339 F. Supp. 329, 334 (S.D.N.Y. 1972).
[27] *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 647 (C.D. Cal. 1996).
[28] *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968), cert. denied, 395 U.S. 977 (1969).

Class treatment provides a just and comprehensive remedy for those who have been injured by fraudulent courses of conduct but who would not be able to effectively protect themselves by separate lawsuits, either due to ignorance or economic situation.[29] It is especially efficacious in actions where there are common questions of law and relief is sought with respect to class as whole.[30] Class actions are relatively inexpensive, expeditious, and a socially desirable way for few named plaintiffs to raise questions concerning the rights of large numbers of people and to secure comprehensive and just remedies where rights are shown to be violated.[31]

Class actions are routinely certified in insurance litigation. Insureds experiencing the same or similar harms usually present common questions of law and fact among putative class members and generally satisfy typicality and commonality requirements of Fed. R. Civ. P. 23(a)(2) and (3).[32]

## III. BACKGROUND

The named Plaintiff, Linda Davis, was a State Farm insured who was seriously injured in an automobile wreck that was caused by an underinsured driver. In August of 2016, State Farm, employing the methods and practices that are at the center of this action, extended an offer of $100,000.00 for the settlement of Linda's UIM claim. The insurer represented to Linda and her counsel that "the offer represents the limits of her Underinsured Motorist Coverage".[33] In fact, Linda had $200,000.00 in UIM coverage with

---

[29] *Moscarelli v. Stamm*, 288 F. Supp. 453, 461 (E.D.N.Y. 1968).
[30] *Poe v. Menghini*, 339 F. Supp. 986, 990 (D. Kan. 1972).
[31] *Watson v. Branch County Bank*, 380 F. Supp. 945, 957 (W.D. Mich. 1974), rev'd, 516 F.2d 902 (6th Cir. 1975).
[32] *Gooch v. Life Investors Ins. Co. of Am.,* 264 F.R.D. 340, 348 (M.D. Tenn. 2009), vacated, in part, 672 F.3d 402 (6th Cir. 2012).
[33] *See Exhibit B*

State Farm. State Farm did not disclose the existence of this additional coverage to Linda or her counsel until May of 2019, when it was revealed in a letter sent to Linda's counsel as part of their internal audit for undisclosed stackable coverage in situations where there was a policy limits payment on another policy. To be clear, this audit was not prompted by any unilateral act of good faith; it was only performed after several other lawsuits identified the issue.

The audit that identified the undisclosed coverage for Linda also identified dozens of other instances of undisclosed coverages in cases where underinsured and uninsured coverage was payable but were concealed from State Farm insureds. These known non-disclosures, and others yet to be identified, were blatant unfair claims practices.

## IV. CLASS DEFINITION

The Plaintiff proposes to certify the following Class, the definition of which is sufficient to make it administratively feasible for the Court to identify whether a particular individual is a member.[34]

i.      All persons who meet the definition of an insured for UM or UIM coverages under one or more Kentucky State Farm auto policies AND

ii.     Were injured in a motor vehicle accident AND

iii.    State Farm did not fully disclose all UM and/or UIM coverages available to the individual for his or her covered losses AND

iv.     The undisclosed UM and/or UIM coverages, had they been disclosed, would have been "payable" for the covered losses. For purposes of the Class,

---

[34] *Young,* supra, 693 F.3d at 537-8.

"payable" is defined by instances where coverage was not disclosed in situations where:

a. For UIM coverage:

    i. The underlying bodily injury coverage available to the individual were exhausted OR

    ii. Where underlying bodily injury coverage to the individual were not exhausted, BUT other UIM coverage which was disclosed to the individual was paid and exhausted

b. For UM coverage:

    i. One or more tortfeasors were uninsured, and the primary disclosed UM coverage was exhausted OR

    ii. There was no other available UM coverage other than that which was not disclosed

## V.  ARGUMENT

### A. This action satisfied the requirements of Rule 23(a)

This Court has broad discretion in determining whether an action should be certified as a class action.[35]  The requirements of Rule 23(a) are satisfied in this instance and favor class treatment.

#### 1.  The Proposed Class Meets the Requirement of Numerosity

While no strict numerical test exists, substantial numbers of affected consumers are sufficient to satisfy the numerosity requirement[36]. The proposed Class in this case satisfies the numerosity requirement for three reasons.  First, the number of people in the

---

[35] *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988).
[36] *Young,* supra, 693 F.3d at 542.

class is sufficient to make joinder impracticable. Counsel is aware of several dozen letters like the one sent to the Plaintiff where State Farm itself identifies instances of non-disclosed payable coverage. Although there is no 'magic number' that satisfies the numerosity requirement, our courts readily recognize that numbers in the dozens present challenges to joinder that merit class certification.[37] In this case, State Farm has the means to identify the members of the class and the need to review further individual files to identify its members are not reasons to deny class certification.[38]

Second, a finding of geographical dispersion among the putative class members will usually support a finding of numerosity because such a finding supports the proposition that joinder is impracticable[39]. State Farm does business pervasively throughout the state of Kentucky; they are Kentucky's largest auto insurer by market share and have agencies in nearly all counties of the state. Putative class members will likewise be dispersed throughout the state. This statewide distribution weighs in favor of finding that conventional joinder of all Plaintiffs in a single action is impracticable.[40]

The third reason is the judicial efficiency of certifying a class versus individual lawsuits. For example, if class members were to file multiple claims in multiple fora, judicial resources would be wasted on duplicative lawsuits.[41] These various actions would present the same or similar questions over and over regarding pre-trial and discovery conduct. The same or similar proof would be taken and presented in each action. There would potentially be dozens of trials. Judicial efficiency would be better served by making

---

[37] See *Davidson*, supra; *Duck*, supra.
[38] *Young,* 693 F.3d at 539.
[39] *Gries v. Standard Ready Mix Concrete*, LLC, 252 F.R.D. 479, 486 (N.D. Iowa 2008).
[40] See, e.g. *Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015), aff'd sub nom. *Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) (likely geographical dispersion of class and subclass members across the state favors finding numerosity).
[41] *Gries,* supra, 252 F.R.D. at 487.

a determination of liability in one class action instead of in potentially dozens of separate actions. Thus, this factor weighs in favor of a finding of numerosity.[42]

### 2. Commonality of Issues is Present Among the Class Claims

The commonality requirement is satisfied in this instance because there are numerous legal and factual questions arising from State Farm's common practices and procedures that are integral to resolution of the issue of liability and which do not vary from one Class member to the next. State Farm has a highly developed system for claims handling and all Class members were similarly subjected to the same policies, methods and procedures, which produced the same harm – i.e. the non-disclosure of payable insurance coverage. Although different Class members may have differing underlying factual bases for their underlying claims and differing degrees of harm, that does not affect the commonality among them created by the uniform practices applied to their claims.

For example, some of the most important common questions of fact include:

- Whether State Farm's practice of assigning separate policy numbers to each household auto policy is deliberately designed to promote the under-reporting of the existence of policies affording payable UM and UIM coverage to Kentucky insureds.

- Whether State Farm employees are incentivized in a manner which promotes the non-disclosure of UM & UIM coverages to Kentucky insureds.

---

[42] *Powell v. Tosh*, 280 F.R.D. 296, 305 (W.D. Ky. 2012), on reconsideration, No. 5:09-CV-121, 2012 WL 2601946 (W.D. Ky. July 5, 2012).

- Whether State Farm's UM and UIM coverage identification and disclosure practices to Kentucky insureds are designed in a manner to promote the non-identification or disclosure.

- Whether State Farm's practice of sending a 'Confirmation of Coverage' document to Kentucky insureds identifying the existence (or lack thereof) of UM and UIM coverages on a single policy, versus sending declarations pages for all household policies, is misleading and deceptive.

- Whether State Farm's non-disclosure of payable UM and UIM coverages to Kentucky insureds was false, misleading and/or deceptive.

- Whether State Farm misrepresented the amount of payable UM and UIM coverage to Kentucky insureds and, if so, whether it was reasonable for the insureds to rely upon the misrepresentations.

These questions are a representative sample of those common to all members of the Class, which by its definition is comprised of individuals who had payable UM or UIM claims and the existence of coverage was not disclosed by State Farm.

Among the important, but not exclusive, common questions of law are:

- Whether State Farm has a duty under common law, the Kentucky Unfair Claims Settlement Practices Act and / or Kentucky's Consumer Protection Act to disclose all payable UM and UIM coverage to their Kentucky insureds.

- Whether the non-disclosure of payable UM and UIM coverage amounts to "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" as identified in the Kentucky Unfair Claims and Settlement Practices Act, KRS 304.12-230.

- Whether the non-disclosure of payable UM and UIM coverage amounts to fraudulent, deceptive and misleading conduct under the Kentucky Consumer Protection Act.

The resolution of any or all of these questions advances the litigation for the entire class and is sufficient to satisfy the commonality requirement of the rule.

### 3. Plaintiff's Claims are Typical of the Class.

In this case, the claims asserted by the class representative coincides precisely with the claims asserted on behalf of the class. Linda Davis had over $350,000 in medical bills. State Farm disclosed $100,000 to Linda Davis as the full amount of her UIM coverage with State Farm. This settlement, when combined with the underlying coverage, did not even cover half of her medical bills. Linda Davis was actually insured under a second household policy affording another $100,000 in medical bills. State Farm withheld the existence of this payable UIM coverage from her until May 2019, more than 2 years after closing out her claim and advising her and her counsel that all UIM coverage was disclosed and paid. This fact pattern represents the precise scenario which defines the class: There was UM or UIM coverage available to a Kentucky State Farm insured. It was payable. State Farm did not disclose it.

Here, all class members were at subjected to the same conduct and harms: they were Kentucky State Farm insureds, there was UM or UIM coverage insuring them, they were in a position to make a claim against it and State Farm did not disclose it. The claims of the class representative are based on the same legal theory as the claims of the class members – that these were violations by State Farm of the Kentucky Unfair Claims and

Settlement Practices Act and the Kentucky Consumer Protection Act, and that the conduct was fraudulent. The typicality requirement is met.

### 4. Plaintiff is an Adequate Representative of the Class

The criteria for adequacy are satisfied in this case. There is no conflict between plaintiffs or their counsel and other class members. The Plaintiff is represented by attorneys who have been involved in similar Kentucky litigation involving similar State Farm practices against other insureds. Counsel for Plaintiff works with several experts who have been involved with similar cases in Kentucky and throughout the country, involving both State Farm and other insurers associated with similar issues. There is no indication that the class representative will not vigorously pursue her claims, which are co-extensive with the class, or that counsel is unable to adequately prosecute those claims.

### B. The proposed Class satisfies the requirements of Rule 23(b)

In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b). A class action may be maintained if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.[43]

Rule 23(b)(3) requires only a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the

---

[43] *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013); Federal Rule of Civil Procedure 23(b)(3)

class.[44]  The proposed class in this case is based on predominate questions and the class will prevail or fail in unison, for all of the same reasons discussed above in conjunction with the Rule 23(a) prerequisites of commonality and typicality.  Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to class-wide proof.  Evidence will either prove or disprove as to all class members whether the alleged practices of State Farm violated the insurer's duties to their insureds; violated the Unfair Claims Settlement Practices Act, the Kentucky Consumer Protection Act; and whether State Farm's practices were deceptive and misleading. Those are questions which predominate in any assessment of liability regardless of the details of individual claims.

Class treatment is also a superior method of addressing these claims.  The superiority prong of Rule 23(b)(3) certification addresses "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."[45]  As previously noted, there are common questions of fact and law that form the nucleus of this case.  If these claims were to be tried as individual actions, there would be an enormous duplication of discovery into the background of the practices employed by State Farm.  This would be a monumental waste of resources – both judicial resources and by individual plaintiffs forced to shoulder the costs and effort of moving their cases forward alone to answer the very same questions.  This would also raise the possibility of inconsistent rulings on the posture of State Farm's practices under the law. Class determination would be clearly superior.

---

[44] *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 521 (6th Cir. 2015)
[45] *Powell,* supra, at 296, 310–11 (W.D. Ky. 2012), on reconsideration, No. 5:09-CV-121, 2012 WL 2601946 (W.D. Ky. July 5, 2012)

## VI. CONCLUSION

Numerous Kentucky State Farm insureds who were injured in accidents were all subjected to the same conduct by the insurer: there was payable State Farm UM and UIM coverage to the insured, State Farm was obligated to identify and disclose (and pay) this coverage to the insured, State Farm did not disclose the coverage and instead closed out the claims with the false representation that there was not any further available coverage. They did this to the Plaintiff. They did this to the class. Plaintiff and her counsel are prepared and well-abled, through experience, experts, resources and insurance litigation history, to represent the class and seek a common resolution. As such, Rule 23 certification is not only proper, but the preferred mechanism to assure that the members of the class are identified and protected.

Respectfully submitted,

**SAM AGUIAR INJURY LAWYERS, PLLC**

*/s/ Sam Aguiar*
C. Sam Aguiar
Jeffrey L. Freeman
1201 Story Avenue, Suite 301
Louisville, Kentucky 40206
Phone: (502) 813-8900
Fax: (502) 491-3946
sam@kylawoffice.com
jfreeman@kylawoffice.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of July, 2019, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system, which sends notice of electronic filing to all CM/ECF participants. It is further certified that a true copy hereof was emailed to the following:


David T. Klapheke
Boehl Stopher & Graves, LLP
400 West Market Street, Suite 2300
Louisville, KY 40202
Phone: (502) 589-5980
dklapheke@bsg-law.com
*Counsel for State Farm*


*/s/ Sam Aguiar*
*Counsel for Plaintiff*